Filed 12/1/22  P. v. Murillo CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE MURILLO,<br><br>    Defendant and Appellant. | B297546<br><br>(Los Angeles County<br>Super. Ct. No. LA010613) |

APPEAL from an order of the Superior Court of Los Angeles County, Frank M. Tavelman, Judge.  Reversed.

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

Mark Zahner (California District Attorneys Association); Michael A. Hestrin, District Attorney (County of Riverside), Alan D. Tate, Managing Deputy District Attorney, Jesse Male, Deputy District Attorney; Jason Anderson, District Attorney (County of San Bernardino), and James R. Secord, Deputy District Attorney, for California District Attorneys Association as Amicus Curiae on behalf of the Plaintiff and Respondent.

_____

In 2019, the trial court summarily denied defendant and appellant Jose Murillo's petition under former Penal Code[1] section 1170.95 for resentencing on his murder conviction. In a previous opinion, we affirmed, reasoning that the jury's finding of a felony-murder special circumstance (§ 190.2, subd. (a)(17)) made Murillo ineligible for resentencing as a matter of law.

The Supreme Court subsequently vacated our decision and ordered us to reconsider the case in light of its decision in *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*). Both Murillo and the Attorney General agree, as do we, that we must reverse the denial of Murillo's petition and remand the case for further proceedings in the trial court.

## FACTS AND PROCEEDINGS BELOW

In a prior opinion in Murillo's direct appeal (*People v. Murillo* (July 28, 1994, B078813) [nonpub. opn.] (*Murillo*)), this court described the facts of this case, beginning with the prosecution's case:

_____

[1] Subsequent statutory references are to the Penal Code.

2

"During the evening of April 12, 1992, 15-year-old Mirna G., 14-year-old Gabriel N. and defendant gathered at a park with a number of others. At some point, it was decided that a group of these individuals would do a 'beer run,' meaning to take beer from a store without paying for it. Mirna, Gabriel, defendant and someone named Peeker made the run. As they drove, they decided Gabriel and defendant would enter the store and get the beer; Mirna would hold the door for them and Peeker would remain in the automobile, ready to drive. Defendant showed the others a handgun.

"After trying several stores, the group settled on one at approximately 11:00 p.m. After the group parked in the Mobil gasoline station, defendant, Gabriel and Mirna walked to the store. As previously arranged, Mirna stayed at the door, while defendant and Gabriel entered the store. Gabriel then walked back and told Mirna to get the beer while he held the door. Defendant and Mirna took several cases of beer and walked out of the store with it; Gabriel followed. As they left the store, they noticed Peeker was putting gasoline into the automobile; they began to run.

"Rocco Pugliese (Pugliese), Eric Hice (Hice) and Chris Brown (Brown), who were standing in the store's parking lot, saw defendant and Mirna running away with something in bags, followed by Gabriel, then saw the store clerk make a gesture that led them to believe there had been a crime. Believing the store had been robbed, Pugliese and Brown pursued the trio who had emerged from the store.

"Defendant, Gabriel and Mirna ran across the street; as they ran, defendant and Mirna dropped the beer. Brown caught up with Mirna and pulled her hair, causing her to fall. She got

3

up and ran in a direction different from that taken by defendant and Gabriel.  Pugliese pursued her, while Brown pursued Gabriel and defendant, going over a wall after them.  As Mirna neared a yard down the street, she heard defendant tell Gabriel, 'Shoot him.'  This was followed by a gunshot.  Pugliese found Brown lying on the grass in a yard beyond the brick wall Brown had scaled; he went for help.  Brown died from a single gunshot wound which perforated the aorta, causing him to bleed to death.

"At this point, Mirna, defendant and Gabriel met and attempted to leave the neighborhood.  Approximately 30 minutes later, Mirna saw defendant trying to hide a gun in the bushes in front of a house near some railroad tracks.  When the trio reached the tracks, Gabriel said he shot someone once to scare him; he said he should have shot the man in the head instead.

"Defendant was arrested on April 14, 1992.  As he was escorted to the police vehicle, he said, 'The white boy shouldn't have tried to be a hero.'  He also said he had 'pulled lots of jobs,' and 'when I pull them, I pull them clean;' he was not going to jail, for he 'was going to take care of the guy that said he shot the white guy.'  During a subsequent police interview, defendant admitted telling Gabriel, 'Shoot him.'  He also said Gabriel was very nervous; he did not want to give him the gun because Gabriel might shoot someone with it.  After he initially told Gabriel to shoot in the air if they were pursued, Gabriel said he would just shoot the pursuer." (*Murillo, supra,* B078813.)

The opinion went on to summarize the defense evidence:

"Defendant admitted his complicity in the burglary.  He acknowledged he belonged to the South Side Reseda street gang.  According to defendant, when the group planned the burglary, he was unarmed.  Someone gave him a handgun as protection

4

should they encounter rival gang members.  Defendant had shot at rival gang members on at least one prior occasion, but he did not intend to use the gun during the burglary.

"As the group drove around looking for the best store to burgle, Gabriel asked defendant what to do if someone pursued them.  Defendant said he would shoot in the air.  As they left one store they had investigated, Gabriel asked for the gun.  Defendant refused to give it to him, explaining he did not want his fellow gang members 'to say we gave you the gun, why did you lose it.'  Gabriel repeated his request for the gun often enough that defendant grew tired of the debate and gave him the gun.  He said nothing further about how the gun should be used.

"As the group fled after stealing the beer, Brown pursued them.  When Brown drew near after they had scaled a wall and entered a yard, defendant told Gabriel to shoot.  He thought Gabriel would shoot in the air.  After Gabriel fired, defendant did not believe anyone had been shot.  Gabriel later said he shot only to scare his pursuer.

"Defendant learned someone had been shot during the pursuit after overhearing a conversation on the following evening.  When defendant was arrested, he was angry at being accused of the shooting and at Gabriel for 'snitching.'  According to defendant, he never said anything at the time of his arrest about Brown trying to be a hero." (*Murillo*, *supra*, B078813.) A jury convicted Murillo of first degree murder (§ 187) and found true a felony murder special circumstance.  (§ 190.2, subd. (a)(17).)  The jury also convicted him of one count of burglary (§ 459) and found true an allegation that a principal was armed in the commission of both the murder and the burglary.  (§ 12022, subd. (a)(1).)  The trial court sentenced

Murillo on the murder count to life in prison without the possibility of parole.  The court suspended the sentence for the burglary pursuant to section 654.

In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437), which abolished the natural and probable consequences doctrine in cases of murder, and limited the application of the felony-murder doctrine.  (See *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.)  Under the new law, a conviction for felony murder requires proof that the defendant was either the actual killer, acted with the intent to kill, or "was a major participant in the underlying felony and acted with reckless indifference to human life."  (§ 189, subd. (e)(3).)  The legislation also enacted former section 1170.95, which established a procedure for vacating murder convictions for defendants who could no longer be convicted of murder because of the changes in the law and resentencing those who were so convicted.  (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)  In 2021, the Legislature enacted Senate Bill No. 775 (2021−2022 Reg. Sess.) (Stats. 2021, ch. 551), which clarified and amended certain aspects of Senate Bill No. 1437.  The Legislature subsequently renumbered former section 1170.95 as section 1172.6 without further substantive change.  (See Stats. 2022, ch. 58, § 10.)

Murillo filed a petition for resentencing on February 26, 2019.  The trial court did not appoint counsel to represent Murillo, and summarily denied the petition on the ground that the jury, in convicting Murillo of special-circumstance felony murder, must have determined either that he acted with the intent to kill in "aid[ing], abet[ting], counsel[ing], command[ing], induc[ing], solicit[ing], request[ing], or assist[ing]" in the murder (§ 190.2, subd. (c)), or that he was a "major participant" in the

burglary who acted with "reckless indifference to human life" (§ 190.2, subd. (d)).  In either case, the court concluded that Murillo was ineligible for resentencing.[2]

## DISCUSSION

In our prior opinion in this case, we affirmed the denial of Murillo's resentencing petition on the ground that the record showed as a matter of law that he was ineligible for relief.  We noted that a felony-murder special-circumstance finding requires proof at a minimum that the defendant acted "with reckless indifference to human life and as a major participant" (§ 190.2, subd. (d)) in the underlying felony.  This is identical to the showing required for felony murder under the law as amended by Senate Bill No. 1437.  (See § 189, subd. (e)(3).)  To be eligible for resentencing, a defendant must first make a prima facie case that he "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective" as a part of Senate Bill No. 1437.  (§ 1172.6, subd. (a)(3).)  Murillo could not meet this requirement because the special-circumstance finding meant that he remained guilty of murder despite the change in the law.

The Supreme Court in *Strong* agreed with us that a prior special-circumstance finding would ordinarily disqualify a defendant from resentencing under section 1172.6.  (See *Strong*, *supra*, 13 Cal.5th at p. 715.)  But the court held that an exception applied to defendants like Murillo who were convicted of special-

---

[2] In the alternative, the trial court held that Senate Bill No. 1437 was unconstitutional.  Both Murillo and the Attorney General agreed from the outset that this conclusion was incorrect, as do we.  (See *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 250–266.)

circumstance felony murder before the court issued its opinions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), clarifying the meaning of "major participant" and "reckless indifference to human life." (*Strong*, *supra*, at pp. 706–707.) The decisions in *Banks* and *Clark* "represent the sort of significant change that has traditionally been thought to warrant reexamination of an earlier-litigated issue" that the principle of issue preclusion would otherwise forbid. (*Id*. at p. 717.) For this reason, the court concluded that a pre-*Banks/Clark* felony-murder special-circumstance finding does not disqualify a defendant from resentencing relief under section 1172.6. (*Strong*, *supra*, at p. 720.)

In our prior opinion, we affirmed the denial of Murillo's petition on a second, independent ground. We examined the facts of the case and determined that, even under the standards enunciated in *Banks* and *Clark*, Murillo was a major participant in the burglary and acted with reckless indifference to human life. The Supreme Court in *Strong* held that this type of analysis is improper at the prima facie stage. (*Strong*, *supra*, 13 Cal.5th at p. 719.) At this stage, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' ([*People v.*] *Drayton* [(2020)] 47 Cal.App.5th [965,] 980.) . . . [T]he 'prima facie bar was intentionally and correctly set very low.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 972.)

Because Murillo has made a prima facie case for resentencing, the trial court must issue an order to show cause and conduct further proceedings in the case. (See § 1172.6, subd. (c).)

8

**DISPOSITION**

The trial court's order denying the petition for resentencing is reversed. On remand, the trial court shall appoint counsel to represent Murillo, issue an order to show cause, and conduct further proceedings as specified in section 1172.6.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.



WEINGART, J.

9